# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ESTRADA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CORRECTIONAL INSTITUTION, et al.,<br><br>Defendants. | Case No. 1:18-cv-00599-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FROM ACTION AND DIRECTING CLERK OF THE COURT TO RANDOMLY ASSIGN THIS ACTION TO A DISTRICT COURT JUDGE<br><br>(ECF No. 8)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Nicholas Estrada is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On September 28, 2018, Plaintiff's complaint was screened and he was ordered to either notify the Court that he wished to proceed on the claim found to be cognizable or file a first amended complaint. (ECF No. 7.) Currently before the Court is Plaintiff's first amended complaint, filed on October 29, 2018. (ECF No. 8.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by individuals who are proceeding in forma pauperis. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (per curiam); 28 U.S.C. § 1915(e)(2). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28

U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently housed at Sierra Conservation Center. The events at issue occurred while Plaintiff was housed at the California Correctional Institution ("CCI"). Plaintiff names R. Bounville, a social worker, Paul Thornberg, a supervising psychiatrist, and William Joe Sullivan, warden of CCI, as defendants. All defendants are sued in their individual capacities.

Plaintiff alleges that on August 28, 2016, he was transferred to CCI in Tehachapi, California, in the mental health program. Plaintiff has severe mental disorders, including audio

and visual hallucinations, bipolar disorder, depression, schizophrenia and has suffered abuse under the CDCR mental health program.

Plaintiff was seen, treated, and diagnosed by an unlicensed psychologist; a social worker named R. Bounville, who referred to herself as a licensed psychologist. She had access to Plaintiff's mental health file without his permission. Defendant Bounville instructed and advised Plaintiff it would be best for him to stop taking his mental health medication due to their long-term side effects which is beyond her cope of experience and profession. Defendant Bounville does not have the authority to give patient advice or consultation in regards to psychiatric medication nor their side effects. Plaintiff contends that had he known that Defendant Bounville was not a psychologist he would not have disclosed his personal information to her.

Several times between August 2016 to June 2017, Plaintiff requested to see the social worker, displaying symptoms of mental disorders. These included hearing voices, audio and visual hallucinations, anxiety, weight gain, depression, anger issues, mood swings, arguing and fighting, over eating, lack of sleep, and crying with thoughts of suicide. Plaintiff alleges that his symptoms were consistent with schizophrenic disorder, bipolar disorder, and depression. Plaintiff explained his symptoms in his requests and his need for medication and a psychiatrist. The social worker told Plaintiff that she would call him into her office every week to see how he was doing, but she never did. After several months of no responses or follow-ups, Plaintiff's symptoms became too overwhelming to handle. He requested to see the social worker by filing a mental health medical request form, and she referred him to a psychiatrist.

Plaintiff had a tele-medicine video conference with the psychiatrist and an assistance nurse was present who took Plaintiff's vitals and remained present during the session. During the session, Plaintiff tried to express his symptoms to the doctor, but did not feel comfortable because the nurse kept laughing and giggling at Plaintiff's symptoms. Believing that he was entitled to confidentiality of his symptoms, Plaintiff cut off the conversation and left the room.

Soon thereafter, the social work called Plaintiff for a meeting, and he was still under the impression that she was a psychologist. Plaintiff told her about the conference and his concerns, and requested to see a psychiatrist in person. She gave Plaintiff a copy of who is entitled to see

his medical file and that all communication was to be done through TelePsychic, including getting medication. She told him that there was no other option as CCI did not have an onsite psychiatrist.

Plaintiff went on for months without mental health care, until CCI brought in a licensed psychologist, Dr. Rosen. This was after Plaintiff filed an administrative complaint that went two levels and up to Sacramento. The response to Plaintiff's complaint made him aware that Defendant Bounville was a social worker, not a licensed psychologist.

Plaintiff's second level 602 was answered by Defendant Thornburg, who had the authority to assist in arranging a psychiatrist consultation for Plaintiff. Defendant Thornburg conspired to condone the fact that Plaintiff and other inmates were being denied care and treatment from a licensed psychologist, in violation of Title 15.

Plaintiff alleges that it was Warden Sullivan's overall decision to employ social workers in place of licensed psychologists due to cost efficiency, and he gave access to patent mental health files to the social workers. It was Warden Sullivan's responsibility to ensure and oversee that there would be a licensed psychologist and psychiatrist on facility grounds available to inmates that participate in the mental health program. Warden Sullivan also implemented and permitted the mental health department to use TelePsychic without full knowledge of the psychiatrist's ability to fully observe and diagnose the patient in regards to their symptoms and medication side effects.

Plaintiff asserts claims for deliberate indifference to serious mental illness in violation of the Eighth Amendment, and for the violation of due process under the Fourteenth Amendment. Plaintiff seeks damages, and seeks to restrict CDCR from employing social workers in the place of psychologists.

**III.**

**DISCUSSION**

**A.    Section 1983**

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. <u>Nurre v. Whitehead</u>, 580 F.3d

1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To prevail on his claim that the defendants violated Plaintiff's constitutional or federal rights, Plaintiff is required to show that each named defendant acted under color of state law and deprived him of rights secured by the Constitution. Long, 442 F.3d at 1185. Because there is no *respondeat superior* liability under section 1983, each defendant is only liable for his own misconduct. Iqbal, 556 U.S. at 677. Therefore, in order to prevail on this claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

### B. Due Process

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated by disclosing his personal information to medical and mental health personal without his consent. There is no "right of privacy" expressly guaranteed by the Constitution, but "the Supreme Court has recognized that 'zones of privacy' may be created by specific constitutional guarantees, thereby imposing limits upon governmental power." Grummett v. Rushen, 779 F.2d 491, 493 (9th Cir. 1985). Courts have held that there are some privacy rights that are within those fundamental rights that are protected by the Due Process Clause of the Fourteenth Amendment. Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 847 (1992). The Supreme Court has recognized that there are two kinds of privacy interests: 1) an individual's interest in avoiding disclosure of personal matters; and 2) an individual's interest in making certain kinds of important decisions. Whalen v. Roe, 429 U.S. 589, 590 (1977).

"In two cases decided more than 30 years ago, [the Supreme Court] referred broadly to a constitutional privacy 'interest in avoiding disclosure of personal matters.'" Nat'l Aeronautics & Space Admin. v. Nelson ("Nelson"), 562 U.S. 134, 138 (2011) (quoting Whalen, 429 U.S. at 599–600; Nixon v. Administrator of General Services, 433 U.S. 425, 457 (1977)). "In [Roe v. Wade, 410 U.S. 113 (1973)], the Supreme Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in Palko v. Connecticut, 302 U.S. 319, 325 (1937)." Paul v. Davis, 424 U.S. 693, 713 (1976). "The activities detailed as being within this definition

were . . . matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct." Paul, 424 U.S. at 713.

Most recently in Nelson, the Supreme Court addressed the claim that requiring contract employees to respond to questions regarding treatment and counseling for illegal drug use during a background check violated their right to privacy. Nelson, 562 U.S. at 138. The Court assumed without deciding that there was a constitutional right to informational privacy. Id. at 138. The Court held that there was no constitutional violation because the government had an interest in managing its internal operations and the questions were reasonable in light of the interests at stake and because the information was shielded from disclosure by the Privacy Act. Id. at 159. It is this right to informational privacy that is at issue here.

"In the years since Whalen, courts have struggled to define the limits of a constitutional right to privacy, especially with respect to disclosure of personal matters." Arakawa v. Sakata, 133 F.Supp.2d 1223, 1226 (D. Haw. 2001); see In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999) (the precise bounds of the constitutional zone of privacy is uncertain); Kallstrom v. City of Columbus, 136 F.3d 1055, 1060 (6th Cir. 1998) (boundaries of the right to privacy have not been clearly delineated); Eagle v. Morgan, 88 F.3d 620, 625 (8th Cir. 1996) ("the exact boundaries of this right are, to say the least, unclear"); James v. City of Douglas, Ga., 941 F.2d 1539, 1543 (11th Cir. 1991) ("constitutional right to privacy has vague contours and has been in a state of flux in recent years").

Courts outside this circuit "have held that where the government releases information, it must be of a highly personal nature before constitutional privacy rights will attach[;]" Arakawa, 133 F.Supp.2d at 1228, and the Ninth Circuit has noted that not every exposure raises privacy concerns that would be protected under the United States Constitution, People of State of Cal. v. F.C.C. ("F.C.C."), 75 F.3d 1350, 1361 (9th Cir. 1996). Although the Supreme Court has never so held, the Ninth Circuit has recognized a constitutionally protected privacy interest in avoiding disclosure of personal matters which encompasses medical records. Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998); Seaton v. Mayberg, 610 F.3d

530, 537 (9th Cir. 2010).

Here, Plaintiff has not alleged that there has been a public disclosure of his private information, but that Defendant Bounville had access to his personal information and treatment records because she was his treating provider and that a nurse sat in on his telemedicine video conference. In <u>Seaton</u>, the Ninth Circuit held "that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." <u>Seaton</u>, 610 F.3d at 534. The Court recognized that the penological interest in the prison's access to an inmate's medical information is substantial. <u>Id.</u> at 534-35. As Plaintiff's allegations demonstrate that the release of his medical records and private information was for the purpose of providing him with treatment for his mental health issues, Plaintiff cannot state a claim for a violation of his right to informational privacy.

Plaintiff also alleges that the denial of treatment by a psychiatrist and proper medication violated his right to due process. The gravamen of Plaintiff's complaint is inadequate mental health treatment. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." <u>Patel v. Penman</u>, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted) <u>overruled on other grounds by</u> <u>Unitherm Food Systems, Inc. V. Swift –Eckrick, Inc.</u>, 546 U.S. 394 (2006); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998).

In this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection . . . ." <u>Patel</u>, 103 F.3d at 874. Therefore, the Eighth Amendment rather than the Due Process Clause of the Fourteenth Amendment governs Plaintiff's claims.

**C. Deliberate Indifference**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). The "deliberate indifference" standard involves an objective and a

subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 834–35.

The two-part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citation omitted).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not

support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

1. Defendant Bounville

Plaintiff alleges that Defendant Bounville, a social worker, told him to stop taking his mental health medication, which was beyond the scope of her profession. He requested to see her several times between August 2016 and June 2017, displaying symptoms of severe mental health disorders, but she failed to see him. Liberally construed, Plaintiff has stated a cognizable claim against Defendant Bounville for inadequate mental health care in violation of the Eighth Amendment.

2. Defendant Thornburg

Plaintiff alleges that Defendant Thornburg was deliberately indifferent by denying his grievance at the second level and not providing Plaintiff with a one on one meeting with a psychiatrist. However, the prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); see Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create liberty interests protected by the Due Process Clause, and so the alleged mishandling of [an inmate's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). To state a claim, Plaintiff must demonstrate that Defendant Thornburg knew of an excessive risk to Plaintiff's health or safety and failed to adequately respond.

Here, Plaintiff alleges that Defendant Thornburg did not provide a one on one consultation with a psychiatrist, but Defendant Thornburg was aware that Plaintiff was receiving

9

treatment by Defendant Bounville and had a telemedicine conference with a psychiatrist. Although Plaintiff alleges that the telemedicine conference is inadequate to meet his mental health needs, this is a difference of opinion between Plaintiff and his treating providers that is insufficient to state a cognizable claim. Sanchez, 891 F.2d at 242. Plaintiff has failed to state a cognizable claim against Defendant Thornburg.

### 3. Defendant Sullivan

"[S]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013). Here, Plaintiff alleges that Defendant Sullivan made the decision to employ social workers in place of licensed psychologists to save money. At the pleading stage, this is sufficient to state a cognizable claim.

## D. Injunctive Relief

Plaintiff brings this action seeking an injunction preventing the CDCR from employing social workers in place of psychologists.[1] Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation

---

[1] Additionally, this claim would appear be covered by the ongoing and settled class actions relating to the treatment of prisoners in California prisons: Coleman v. Brown, case no. 2:90–CV–520–KJM–DB (E.D. Cal); Hecker v. California Department of Corrections and Rehabilitation, case no. 2:05–CV–2441–KJM–DAD (E.D. Cal.); Mitchell v. Cate, case no. 2:08–CV–01196–TLL–EFB (E.D. Cal.); and Plata v. Schwarzenegger, case no. C–01–1351 TEH (N.D. Cal., filed Apr. 5, 2001). To address Plaintiff's request, the Court judicially notices these cases and their dockets. See Fed. R. Evid. 201(c)(1). These class actions have brought about various settlements, injunctions, and remedial plans that have resulted from the litigation of the aforementioned class actions. Where a plaintiff is seeking injunctive relief on claims are subject to a consent decree, such claims must be pursued through the consent decree or class counsel. Frost v. Symington, 197 F.3d 348, 358-59 (9th Cir. 1999); Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002). Although plaintiff may be able to pursue damages claims under section 1983, Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996), Plaintiff cannot receive injunctive relief related to his mental health care allegations in this action.

Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Plaintiff's allegations in this action do not confer jurisdiction over the CDCR in this action. Therefore, Plaintiff cannot receive an order directing the CDCR to change policy in this action. Further, when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Plaintiff is no longer incarcerated at CCI and his claims that he was subjected to an unconstitutional policy implemented by the warden are therefore moot.

Finally, Plaintiff cannot seek relief in this action on behalf of all inmates incarcerated by CDCR. Standing derives "[f]rom Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation[.]" Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125 (2014); see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) ("the case-or-controversy limitation is crucial in maintaining the 'tripartite allocation of power' set forth in the Constitution"); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) ("standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). To have standing to bring suit, a "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Lexmark Int'l, Inc., 572 U.S. at 125; accord DaimlerChrysler Corp., 547 U.S. at 342. The party asserting federal jurisdiction bears the burden of establishing standing under Article III. DaimlerChrysler Corp., 547 U.S. at 342; Lujan, 504 U.S. at 561. A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties. Oregon v. Legal Services Corp., 552 F.3d 965, 971 (9th Cir. 2009); Fleck and Associates, Inc. v. Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006.) Plaintiff does not have standing to assert the constitutional rights of other inmates. Mabe v. San Bernardino Cty., Dep't of Pub.

Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001).

For these reasons, Plaintiff cannot obtain injunctive relief in this action and the claim for injunctive relief should be dismissed without leave to amend.

### E. Leave to Amend

Amendment of the complaint is governed by Rule 15 of the Federal Rules of Civil Procedure which provides that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

In this instance, Plaintiff has previously been provided with the legal standards that apply to his claims and has failed to correct the deficiencies identified in the second amended complaint Having considered the original and amended complaint, the allegations are substantially similar and Plaintiff cannot cure the deficiencies by further amendment. The Court finds that granting further leave to amend would be futile. Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1130 (9th Cir. 2013); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir.1995).

### G. Intradistrict Assignment

In his amended complaint, Plaintiff contends that this action should be assigned to the Bakersfield Division of the Eastern District of California because the events in the complaint occurred at a facility located in Kern County. Intradistrict transfers are governed by 28 U.S.C. § 1404(b) which provides "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." Intradistrict transfers under section 1404(b) are discretionary and are subject to the same analysis as transfers under section 1404(a) which governs interdistrict transfers. Stribling v. Picazo, No. 15-CV-03337-YGR, 2018 WL 620146, at *1 (N.D. Cal. Jan. 30, 2018); Welenco, Inc. v. Corbell, No. CIV. S-13-0287 KJM, 2014 WL 130526, at *4 (E.D. Cal. Jan. 14, 2014); but

the factors are judged by a less rigorous standard, Cheval Farm LLC v. Chalon, No. CV-10-01327-PHX-ROS, 2011 WL 13047301, at *2 (D. Ariz. Jan. 19, 2011).

Venue in this action is proper in this division as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(b)(2). In deciding whether to grant an intradistrict transfer here the court considers the correct forum to best serve the interests of judicial economy and the convenience to the parties. Injen Tech. Co. v. Advanced Engine Mgmt., Inc., 270 F.Supp.2d 1189, 1193 (S.D. Cal. 2003). The private factors to be considered in determining whether to transfer venue under section 1404(a) include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Decker Coal Co., 805 F.2d at 843. As relevant here, the public factors to consider include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; . . . and the unfairness of burdening citizens in an unrelated forum with jury duty." Id.

Plaintiff states that this action should be transferred to Bakersfield because the events at issue occurred in Kern County. Defendants most likely reside in the Tehachapi area, which is in Kern County. The Fresno Division is approximately 100 miles further than the Bakersfield Division from Defendants' residence. However, Defendants will be represented by the Office of the Attorney General which is located in Sacramento. Plaintiff is currently housed at Sierra Conservation Center in Jamestown, California which is in the Fresno Division of the Eastern District. The actual presence of the parties in this action would likely only be required for a settlement conference or trail. Therefore, the Court does not find that the convenience of the parties would weight in favor of transferring this action to Bakersfield.

Further, this Court has now screened Plaintiff's complaint and amended complaint and is familiar with the claims raised in this action. Transferring this action to the Bakersfield Division would require duplication of judicial effort. As this Court has expended its efforts in this action, it is in the interest of judicial economy to maintain the action in this division.

1     Also, whether this action is assigned to the Fresno Division of the Eastern District or the Bakersfield Division of the Eastern District, the trial itself will likely take place in Fresno. Regardless of whether this action is tried in Fresno or Bakersfield, both courts pull from the same jury pool so there is no issue with burdening citizens in an unrelated forum with jury duty. Further, the caseload of all judges in the Eastern District are among the heaviest in the nation. Since both this court and the requested court are congested, the issue of courtroom congestion does not weight in favor of transferring the action to the Bakersfield Division.

Here, the Court finds that the factors weigh in favor of maintaining this action in the Fresno Division and transfer would not further the interests of justice. The Court finds that this action should remain in the Fresno Division of the Eastern District of California.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed, the Court finds that Plaintiff has stated a cognizable claim against Defendants Bounville and Sullivan for deliberate indifference to serious mental health needs in violation of the Eighth Amendment.[2] However, Plaintiff has failed to state any other cognizable claims for relief. Plaintiff has previously been granted leave to file an amended complaint and provided with the legal standards that apply to his claims. The Court finds that granting further leave to amend would be futile.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Thornburg be dismissed from this action for Plaintiff's failure to state a cognizable claim against him;
2. Plaintiff's due process claim and request for injunctive relief be dismissed without leave to amend;
3. This action proceed against Defendants Bounville and Sullivan for deliberate indifference in violation of the Eighth Amendment;

---

[2] The Court notes that the prior screening order found that Plaintiff had stated a claim against Defendant Bounville for violation of the Fourteenth Amendment. (ECF No. 7 at 10). However, review of the order itself shows that this was an error and Plaintiff had stated an Eighth Amendment claim. (Id. at 7-8.)

1. 4. Plaintiff's request for an intradistrict transfer to the Bakersfield Division of the Eastern District of California be denied; and
2. 5. The Clerk of the Court is directed to randomly assign this action to a district court judge.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court and serve a copy on Plaintiff. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 11, 2019**

UNITED STATES MAGISTRATE JUDGE