**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS ESTRADA,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA CORRECTIONAL INSTITUTION, et al.,<br><br>  Defendants. | Case No.: 1:18-cv-00599-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE DENIED<br><br>[ECF No. 16] |

Plaintiff Nicholas Estrada is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion to dismiss, filed September 6, 2019.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Bounville and Sullivan for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

///

///

///

///

1

As previously stated, on September 6, 2019, Defendants filed a motion to dismiss the action. (ECF No. 16.) Plaintiff did not file an opposition and the time to do has expired.[1] Local Rule 230(l). Accordingly, Defendants' motion to dismiss is deemed submitted for review without oral argument. Id.

## II.

## LEGAL STANDARD

A motion to dismiss, based on res judicata grounds, is properly made under Federal Rule of Civil Procedure 12(b)(1). Gupta v. Thai Airways Intern., Ltd., 487 F.3d 759, 763 (9th Cir. 2007). However, the court applies California law on claim preclusion to cases brought in federal court under 42 U.S.C. § 1983. "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980).

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-

---

[1] On March 23, 2020, the Court directed Defendants to re-serve a copy of their motion to dismiss on Plaintiff, as his most recent address of record. (ECF No. 20.) On this same date, Defendants filed a notice that their motion to dismiss was re-served on Plaintiff at his new address of record as reflected in the February 2, 2020, notice of change of address. (ECF Nos. 19, 21.)

moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  Yet, the court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006).

### III.
### DISCUSSION

#### A. Allegations of Complaint

Plaintiff alleges that on August 28, 2016, he was transferred to CCI in Tehachapi, California, in the mental health program.  Plaintiff has severe mental disorders, including audio and visual hallucinations, bipolar disorder, depression, schizophrenia and has suffered abuse under the CDCR mental health program.

Plaintiff was seen, treated, and diagnosed by an unlicensed psychologist; a social worker named R. Bounville, who referred to herself as a licensed psychologist.  She had access to Plaintiff's mental health file without his permission.  Defendant Bounville instructed and advised Plaintiff it would be best for him to stop taking his mental health medication due to their long-term side effects which is beyond her cope of experience and profession.  Defendant Bounville does not have the authority to give patient advice or consultation in regard to psychiatric medication nor its side effects.  Plaintiff contends that had he known that Defendant Bounville was not a psychologist he would not have disclosed his personal information to her.

Several times between August 2016 to June 2017, Plaintiff requested to see the social worker, displaying symptoms of mental disorders.  These included hearing voices, audio and visual hallucinations, anxiety, weight gain, depression, anger issues, mood swings, arguing and fighting, over eating, lack of sleep, and crying with thoughts of suicide.  Plaintiff alleges that his symptoms were consistent with schizophrenic disorder, bipolar disorder, and depression.  Plaintiff explained his symptoms in his requests and his need for medication and a psychiatrist.  The social worker told Plaintiff that she would call him into her office every week to see how he was doing, but she never did.  After several months of no responses or follow-ups, Plaintiff's symptoms became too overwhelming to handle.  He requested to see the social worker by filing a mental health medical request form, and she

3

referred him to a psychiatrist.

Plaintiff had a tele-medicine video conference with the psychiatrist and an assistance nurse was present who took Plaintiff's vitals and remained present during the session.  During the session, Plaintiff tried to express his symptoms to the doctor, but did not feel comfortable because the nurse kept laughing and giggling at Plaintiff's symptoms.  Believing that he was entitled to confidentiality of his symptoms, Plaintiff cut off the conversation and left the room.

Soon thereafter, the social work called Plaintiff for a meeting, and he was still under the impression that she was a psychologist.  Plaintiff told her about the conference and his concerns, and requested to see a psychiatrist in person.  She gave Plaintiff a copy of who is entitled to see his medical file and that all communication was to be done through TelePsychic, including getting medication.  She told him that there was no other option as CCI did not have an onsite psychiatrist.

Plaintiff went on for months without mental health care, until CCI brought in a licensed psychologist, Dr. Rosen.  This was after Plaintiff filed an administrative complaint that went two levels and up to Sacramento.  The response to Plaintiff's complaint made him aware that Defendant Bounville was a social worker, not a licensed psychologist.

Plaintiff alleges that it was Warden Sullivan's overall decision to employ social workers in place of licensed psychologists due to cost efficiency, and he gave access to patent mental health files to the social workers.  It was Warden Sullivan's responsibility to ensure and oversee that there would be a licensed psychologist and psychiatrist on facility grounds available to inmates that participate in the mental health program.  Warden Sullivan also implemented and permitted the mental health department to use TelePsychic without full knowledge of the psychiatrist's ability to fully observe and diagnose the patient in regards to their symptoms and medication side effects.

**B.     Request for Judicial Notice**

Defendant requests the Court to take judicial notice of: (1) Plaintiff's sworn declaration submitted in Coleman v. Brown, Jr., et al., Case No. 2:90-cv-00520-KJM-DB, (2) section 12.08.100, Telepsychiatry, Chapter 8, Volume 12: CDCR Tele-Psychiatry Policy, 2016 version, and (3) the Court's order on Tele-Psychiatry, Coleman v. Brown, Jr., et al., Case No. 2:90-cv-00520-KJM-DB, in support of their motion to dismiss.  (ECF No. 16-2.)

4

Federal Rule of Evidence 201 permits the Court to take judicial notice at any time. A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources who accuracy reasonably cannot be questioned. Fed. R. Evid. 201(b). Courts may take judicial notice of facts related to the case before it. Amphibious Partners, LLC v. Redman, 534 F.3d 1357, 1361-1362 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties). This Court may judicially notice the records and filing of other court proceedings. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002). This includes documents filed in state courts. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

Because the Court may take judicial notice of public records, including duly recorded documents under Rule 201(b)(2), Defendants' request to take judicial notice of the above-mentioned documents is granted.

**C.     Motion to Dismiss**

Defendants argue it is clear on the face of the sworn declaration attached to Plaintiff's first amended complaint and judicially-noticed records, that Defendants did not violate Plaintiff's constitutional rights and they are entitled to qualified immunity.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 834–35.

///

///

5

The two-part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019 (9th Cir.2 010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citation omitted).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

    1.    Defendant Bounville

Defendant Bounville argues that Plaintiff's sworn declaration demonstrates that Bounville had no role, other than referring him to a psychiatrist, in prescribing, changing, or withholding his mental health medications while at CCI.

///

1    In the operative first amended complaint, Plaintiff alleges, in pertinent part, that, on August 28, 2016, he was transferred to CCI. He was classified as a CCCMS inmate who suffered from severe mental health disorders and needed treatment from a licensed psychologist or psychiatrist. At CCI, Plaintiff saw Defendant Bounville, a Licensed Social Worker who improperly held herself out as a licensed psychologist. Defendant Bounville acted outside the scope of her license by advising Plaintiff to stop taking his prescribed medication because he was doing well and it would be best to "stay off" the medication due to long-term side effects.

In Plaintiff's sworn declaration, filed in Coleman v. Brown, Jr., et al., Case No. 2:90-cv-00520-KJM-DB, Plaintiff states, in pertinent part, that "[a]round the time I arrived at CCI in August 2016, I had stopped taking my medications because I wanted to try managing my symptoms on my own. However, a short time later I started feeling worse and wanted to talk to a psychiatrist about my medications. When I told my primary clinician that I was having troubles with my medications, she referred me to see a telepsychiatrist." (First Am. Compl. Ex. A; see also ECF No. 16-2.) Plaintiff also states, in part, that "[a]ll of the distress and agitation from not seeing an in-person psychiatrist and being refused my medication caused me extreme mental suffering. These problems were so severe that on May 2, 2018, I filed a civil rights complaint against CDCR, Estrada v. California Correctional Institution, et al., No. 1:18-cv-0599-SAB (E.D. Cal.). In my complaint, I argue, among other things, that telepsychiatry is not an appropriate method of mental health treatment." (Id.)

In the February 12, 2019 screening order, the Court found that Plaintiff stated a cognizable claim against Defendant Bounville because she told him to stop taking his mental health medication, which was beyond the scope of her profession as a social worker, and that he requested to see her several times between August 2016 and June 2017, displaying symptoms of severe mental health disorders, but she failed to see him. (ECF No. 9 at 9.)

The Court may disregard "conclusory allegations" when they are "contradicted by documents referred to in the complaint," however, this doctrine is "only triggered upon a threshold determination of a 'contradiction,' which only exists when the statements are 'inherently inconsistent.' " Lawyers Funding Grp., LLC v. Harris, No. 15-04059 MMM (Ex), 2015 WL 13298145, at *5 (C.D. Cal. Sept. 18, 2015). Plaintiff's declaration does not establish such an inherent inconsistency.

7

Although Plaintiff did state that he stopped taking his medication because he wanted to try to manage the symptoms on his own, it leaves open the possibility that Defendant Bounville advised him to stop taking the medication to which he complied.  Thus, for the purposes of claims against Defendant Bounville, it is entirely possible that she advised Plaintiff to stop taking the medication which lead to side effects.  Therefore, the Court finds that Plaintiff's statement is properly characterized as an omission, not a contradiction.  In addition, Defendants cannot pick and choose portions of the allegations and exhibits in order to create a contradiction.  Accordingly, the motion to dismiss should be denied.

### 2. Defendant Sullivan

Defendant Sullivan argues that it is clear from the face of the relevant section of the CDCR Mental Health Services Delivery System Program Guide in effect during the relevant period, incorporated by reference to the first amended complaint that, the tele-psychiatry program was implemented state-wide by CDCR, not Warden Sullivan.

 Defendant Sullivan mischaracterizes Plaintiff's claim.  Pursuant to the Court's February 12, 2019 screening order, the Court found that Plaintiff stated a cognizable claim against Defendant Sullivan based on the allegations that he made the decision to employ social workers in place of licensed psychologists to save money.  (ECF No. 9 at 10.)  Therefore, the use of telepsychiatry does not address or implicate Plaintiff's claim that Defendant Sullivan employed social workers in place of licensed psychologists strictly to save money.  Rather, the use of tele-psychiatry is relative to Plaintiff's claim of whether Defendant Bounville, as a social worker, provided sufficient mental health treatment.  Accordingly, Defendant Sullivan's motion to dismiss should be denied.

### 3. Qualified Immunity

Defendants Bounville and Sullivan are they are entitled to qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claim because there is no constitutional violation based on the facts alleged in Plaintiff's first amended complaint and it is not beyond debate that they pursued an unreasonable course of treatment by referring him to tele-psychiatry appointment.  (ECF No. 16, at 10-11.)

///

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). However, "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making. On the one hand, we may not dismiss a complaint making 'a claim to relief that is plausible on its face.'" Keates v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018). "But on the other hand, defendants are entitled to qualified immunity so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The Supreme Court has emphasized that this is a low bar, explaining that '[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)). "Indeed, '[w]hen properly applied,' qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id.

"Determining whether [Defendants] are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016) (citation and internal quotation marks omitted); see also Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94. "The dispositive question is whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, ⎯⎯ U.S. ⎯⎯, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted).

"When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." O'Brien, 818 F.3d at 936 (citation and internal quotation marks omitted).

"Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). "If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiff[ is] 'entitled to go forward' with [his] claims." Keates, 883 F.3d at 1235 (citation omitted).

As applied to this case, the Eighth Amendment right to adequate mental health treatment was "clearly established at the time of [D]efendants' actions." "Both as a matter of law and common sense, in order to meet [the] requirement of the federal Constitution, defendants must provide inmates with access to a competent medical staff." Coleman v. Wilson, 912 F. Supp. 1282, 1308 (E.D. Cal. 1995); see also Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 (9th Cir. 1988) ("[A]ccess to medical staff is meaningless unless that staff is competent and can render competent care."), vacated on other grounds, 490 U.S. 1087 (1989), decision reinstated on remand, 886 F.2d 235 (9th Cir. 1989). The rendering of medical services by unqualified personnel constitutes Eighth Amendment deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1112 (9th Cir. 1986) ("If plaintiffs correctly contend that unqualified personnel[—medical technical assistants, registered nurses, and inmate workers—]regularly engage in medical practice, precedent indicates that the prison health care delivery system may reflect deliberate indifference to plaintiffs' medical needs."); see also Hoptowit v. Ray, 682 F.2d 1237, 1252 (9th Cir. 1982) (holding that district court correctly found Eighth Amendment violation where, *inter alia*, medical services were provided by nurse practitioners, physician assistants, and hospital supervisors, and medication was prepared and dispensed by persons not trained or licensed to do so). Therefore, a reasonable official in Defendants' shoes would thus have known that providing Plaintiff with unqualified mental health treatment violated Plaintiff's Eighth Amendment right to adequate constitutional mental health treatment.

Whether Defendant Bounville actually was qualified and/or sufficiently supervised, whether Defendant Sullivan utilized social workers in an effort to save money, and whether the referral to tele-psychiatry was sufficient in this instance are issues for a later stage in the litigation. Without further development of the factual record, it is not possible to determine whether Defendants' actions are entitled to qualified immunity. Given the factual nature of the inquiry, determining qualified immunity

at the motion to dismiss stage is disfavored because it would require determination of constitutional questions on a nonexistent factual record. Wong v. United States, 373 F.3d 952, 956–57 (9th Cir. 2004).

Based on the allegations set forth, construed in the light most favorable to Plaintiff, Plaintiff's first amended complaint sufficiently alleges that Defendants Bounville and Sullivan violated clearly established law by being deliberately indifferent to the substantial risk of serious harm to Plaintiff by providing unqualified mental health treatment.

As noted above, the Ninth Circuit has held that if a complaint "'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiff[ is] 'entitled to go forward' with [his] claims." Keates, 883 F.3d at 1235 (citation omitted). However, the Ninth Circuit has also held that the Court's "decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions." Id. Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim based on qualified immunity should be denied without prejudice. O'Brien, 818 F.3d at 936 ("Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity.")

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion to dismiss the first amended complaint be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

///

///

specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 28, 2020**

UNITED STATES MAGISTRATE JUDGE