UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ESTRADA,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA CORRECTIONAL INSTITUTION, et al.,<br><br>    Defendants. | Case No.: 1:18-cv-00599-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 40) |

Plaintiff Nicholas Estrada is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment for failure to exhaust the administrative remedies, filed on April 9, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Bounville and Sullivan for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

On September 6, 2019, Defendants filed a motion to dismiss the complaint for failure to state a cognizable claim for relief. (ECF No. 16.)

On May 28, 2020, the undersigned issued Findings and Recommendations recommending that

1

Defendants' motion to dismiss the complaint be denied. (ECF No. 22.)

On August 10, 2020, the Findings and Recommendations were adopted in full, and Defendants' motion to dismiss was denied. (ECF No. 23.)

Defendants then filed an answer to the complaint on August 19, 2020. (ECF 24.)

After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on February 3, 2021. (ECF No. 39.)

Defendants filed the instant motion for summary judgment on April 9, 2021. (ECF No. 40.) Plaintiff did not file an opposition and the time to do so has passed. Local Rule 230(l). Accordingly, Defendants' motion for summary judgment is submitted for review without oral argument. (Id.)

## II.

## LEGAL STANDARD

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory unless unavailable. Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no

1  longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the
2  grievance." <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing <u>Booth</u>
3  <u>v. Churner</u>, 532 U.S. 731, 739 (2001)).
4       The failure to exhaust is an affirmative defense, and the defendant or defendants bear the
5  burden of raising and proving the absence of exhaustion. <u>Jones v. Bock</u>, 549 U.S. at 216; <u>Albino v.</u>
6  <u>Baca</u>, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the
7  face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." <u>Albino</u>, 747 F.3d at
8  1166. Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust,
9  and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in
10 the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. <u>Id.</u>

A. Summary Judgment Standard

12      Any party may move for summary judgment, and the Court shall grant summary judgment if
13 the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to
14 judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Albino</u>, 747 F.3d at
15 c1166; <u>Wash. Mut. Inc. v. United States</u>, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,
16 whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of
17 materials in the record, including but not limited to depositions, documents, declarations, or discovery;
18 or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or
19 that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.
20 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to
21 by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. S.F. Unified</u>
22 <u>Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d
23 1011, 1017 (9th Cir. 2010). "The evidence must be viewed in the light most favorable to the
24 nonmoving party." <u>Williams v. Paramo</u>, 775 F.3d 1182, 1191 (9th Cir. 2014).
25      Initially, "the defendant's burden is to prove that there was an available administrative remedy,
26 and that the prisoner did not exhaust that available remedy." <u>Albino</u>, 747 F.3d at 1172. If the
27 defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward
28 with evidence showing that there is something in his particular case that made the existing and

generally available administrative remedies effectively unavailable to him." Id.  However, the ultimate burden of proof on the issue of administrative exhaustion remains with the defendant.  Id.  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

## III.

## DISCUSSION

### A.   Summary of CDCR's Administrative Appeal Process[1]

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602.  Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4).  Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed.  Id.  If the inmate does not know the staff member's identifying information, the inmate is required to "provide

---

[1] On March 25, 2020, the grievance procedure outlined in § 3084.1, *et seq.*, was repealed effective June 1, 2020, as an emergency by the CDCR pursuant to Penal Code § 5058.3. *See* CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020).  However, there is no dispute that the events alleged in the first amended complaint took place before the repeal took effect.

4

any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b). When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits. Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e). If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).

**B.      Summary of Relevant Factual Allegations of Plaintiff's Complaint**

Plaintiff alleges that on August 28, 2016, he was transferred to CCI in Tehachapi, California, in the mental health program. Plaintiff has severe mental disorders, including audio and visual hallucinations, bipolar disorder, depression, schizophrenia and has suffered abuse under the CDCR mental health program.

Plaintiff was seen, treated, and diagnosed by an unlicensed psychologist; a social worker named R. Bounville, who referred to herself as a licensed psychologist. She had access to Plaintiff's mental health file without his permission. Defendant Bounville instructed and advised Plaintiff it would be best

5

1  for him to stop taking his mental health medication due to their long-term side effects which is beyond
2  her cope of experience and profession.  Defendant Bounville does not have the authority to give patient
3  advice or consultation in regard to psychiatric medication nor its side effects.  Plaintiff contends that
4  had he known that Defendant Bounville was not a psychologist he would not have disclosed his personal
5  information to her.

6  Several times between August 2016 to June 2017, Plaintiff requested to see the social worker,
7  displaying symptoms of mental disorders.  These included hearing voices, audio and visual
8  hallucinations, anxiety, weight gain, depression, anger issues, mood swings, arguing and fighting, over
9  eating, lack of sleep, and crying with thoughts of suicide.  Plaintiff alleges that his symptoms were
10 consistent with schizophrenic disorder, bipolar disorder, and depression.  Plaintiff explained his
11 symptoms in his requests and his need for medication and a psychiatrist.  The social worker told Plaintiff
12 that she would call him into her office every week to see how he was doing, but she never did.  After
13 several months of no responses or follow-ups, Plaintiff's symptoms became too overwhelming to
14 handle.  He requested to see the social worker by filing a mental health medical request form, and she
15 referred him to a psychiatrist.

16 Plaintiff had a tele-medicine video conference with the psychiatrist and an assistance nurse was
17 present who took Plaintiff's vitals and remained present during the session.  During the session, Plaintiff
18 tried to express his symptoms to the doctor, but did not feel comfortable because the nurse kept laughing
19 and giggling at Plaintiff's symptoms.  Believing that he was entitled to confidentiality of his symptoms,
20 Plaintiff cut off the conversation and left the room.

21 Soon thereafter, the social work called Plaintiff for a meeting, and he was still under the
22 impression that she was a psychologist.  Plaintiff told her about the conference and his concerns, and
23 requested to see a psychiatrist in person.  She gave Plaintiff a copy of who is entitled to see his medical
24 file and that all communication was to be done through TelePsychic, including getting medication.  She
25 told him that there was no other option as CCI did not have an onsite psychiatrist.

26 Plaintiff went on for months without mental health care, until CCI brought in a licensed
27 psychologist, Dr. Rosen.  This was after Plaintiff filed an administrative complaint that went two levels
28 and up to Sacramento.  The response to Plaintiff's complaint made him aware that Defendant Bounville

was a social worker, not a licensed psychologist.

Plaintiff alleges that it was Warden Sullivan's overall decision to employ social workers in place of licensed psychologists due to cost efficiency, and he gave access to patent mental health files to the social workers. It was Warden Sullivan's responsibility to ensure and oversee that there would be a licensed psychologist and psychiatrist on facility grounds available to inmates that participate in the mental health program. Warden Sullivan also implemented and permitted the mental health department to use TelePsychic without full knowledge of the psychiatrist's ability to fully observe and diagnose the patient in regards to their symptoms and medication side effects.

### C. Statement of Undisputed Facts[2]

1. Between August 1, 2016, and May 2, 2018 (the relevant period), Plaintiff was a prisoner within the custody of the California Department of Corrections and Rehabilitation (CDCR). (First Am. Compl., ECF No. 8.)

2. During the relevant period, Plaintiff was incarcerated at California Correctional Institution (CCI). (Id.)

3. On January 3, 2017, Plaintiff submitted one health care appeal that was accepted and adjudicated at the third level of review: Log. No. CCI-HC-17038702. (Declaration of S. Gates ("Gates Decl.") ¶¶ 7-8, Exs. 1-2.)

4. In health care appeal, Log. No. CCI-HC-17038702, Plaintiff alleged that he was not satisfied with the mental health services at CCI, wanted a face to face meeting with a psychiatrist and his psychiatric medication. (Gates Decl. ¶ 9, Ex. 2.)

5. Plaintiff did not name, or reasonably identify Defendant Sullivan in Log No. CCI-HC-17038702. (Id.)

6. On January 26, 2017, Defendant Bounville interviewed Plaintiff about his claims at the first level of review. (Id.)

7. On February 6, 2017, Plaintiff submitted health care appeal Log No. CCI-HC-

---

[2] Hereinafter referred to as "DUdF."

17038702 to the second level because he disagreed with the first level decision and alleged for the first time that he was led to believe that Bounville was a licensed psychiatrist or psychologist. (Id.)

8. In health care appeal. Log No. CCI-HC-17038702, Plaintiff did not allege that Bounville held herself out to be a licensed psychiatrist or psychologist. (Id.)

9. Plaintiff also did not allege that Bounville, or any member of the mental health care team at CCI, suggested that he stop taking his psychiatric medications. (Id.)

10. In log number CCI-HC-17038702, Plaintiff also did not allege that Defendant Sullivan, or any other prison official at CCI, refused to hire on-site licensed psychiatrist or psychologists to save money. (Id.)

11. Plaintiff did not submit any other health care appeal for review while he was housed at CCI during the relevant period. (Gates Decl. ¶ 10, Ex. 2.)

**D.  Analysis of Defendants' Motion**

Defendants argue that it is undisputed that Plaintiff's only relevant health care appeal failed to name and/or reasonably identify them, failed to raise the allegations in his complaint, and failed to put CDCR on notice of the allegations in his complaint against them.

It is uncontested that Plaintiff had an available administrative remedy, and that his grievance CCI-HC-17038702 exhausted such administrative remedies. The only issue in the instant motion is whether grievance CCI-HC-17038702—Plaintiff's sole administrative grievance exhausted the claims in the first amended complaint against Defendants. (*See generally* Mot.)

1. Defendant Bounville

Pursuant to the Court's February 12, 2019, screening order, Plaintiff is proceeding against Defendant Bounville as the allegations that, as a social worker, she told him to stop taking his mental health medication, which was beyond the scope of her profession. (ECF No. 9 at 9.) Plaintiff also alleges that he requested to see Bounville several times between August 2016 and June 2017, displaying symptoms of severe mental health disorders, but she failed to see him. (Id.) With these factually allegations in him, the Court turns to whether Plaintiff put prison officials on notice of the allegations against Defendant Bounville.

///

As to the requisite level of specificity, inmates were required to state "all facts known and available to him/her regarding the issue being appealed at the time of submitting the [Form 602]." Cal. Code Regs., tit. 15, § 3084.2(a)(4) (2011). Inmates were also required to "list all staff member(s) involved and ... describe their involvement in the issue," by stating "the staff member's last name, first initial, title or position." Cal. Code Regs., tit. 15, § 3084.2(a)(3) (2011). If the inmate did not have this information, he or she was required to provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.[3] Administrative remedies would not be considered exhausted for any "new issue, information, or person" later named by an inmate "not included in the originally submitted CDCR Form 602." Cal. Code Regs., tit. 15, § 3084.1(b) (2011).

However, the Ninth Circuit has recently held that "a prisoner exhausts such administrative remedies as are available...under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, 2017 WL 784894, at *4–5 (E.D. Cal. Mar. 1, 2017); Franklin v. Lewis, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016). Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies. Reyes, 810 F.3d at 958; Foulk, 2017 WL 784894, at *4 ("[T]he court in Reyes found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit—that the plaintiff was wrongfully denied pain medication."); Lewis, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); Grigsby v. Munguia, No. 2:14–cv–0789 GAB AC P, 2016 WL 900197, at *11–12 (E.D. Cal. Mar. 9, 2016); see also Bulkin v. Ochoa, 2016 WL 1267265, at *1–2 (E.D. Cal. Mar. 31, 2016); see also McClure v. Chen, 246 F.Supp.3d 1286, 1292–94 (E.D. Cal. Mar. 28, 2017).

9

      Nonetheless, for administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." Reyes, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication); McClure, 246 F. Supp. 3d at 1293–94 (remedies exhausted even though doctors not named in appeal; prison was placed on notice)).

      In the original grievance CCI-HC-17038702, submitted to the first level of review, Plaintiff stated, "Tehachapi State Prison fails to provide proper mental health services.  Inmate has been waiting for months for his medication and psychiatrist counseling." (DUdF 4.)  Plaintiff requested "[t]o have a physical counseling face to face with a psychiatrist and get my medication ASAP."  (Id.) It is undisputed that Defendant Bounville was not named as a wrongdoer in the original grievance CCI-HC-17038702 submitted to the first level of review. Cal. Code Regs. tit. 15, § 3084.1 (2011). Nor did Plaintiff "describe his involvement in the issue" in the originally filed administrative appeal. Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).  Plaintiff did not specifically name Bounville as a social worker in grievance CCI-HC-17038702 until the second level of review.  Thus, Defendant Bounville was "later named by the appellant," and Plaintiff did not exhaust as to this Defendant. Cal. Code Regs. tit. 15, § 3084.1(b).  Notwithstanding this fact, Plaintiff did not sufficiently describe the alleged misconduct by Defendant Bounville to place the prison on notice of the claims upon which this action proceeds.  More specifically, there are no allegations that Defendant Bounville held herself out to be psychiatrist or psychologist or that she told him to stop taking his mental health medication.  Nor are there sufficient allegations that Bounville failed to see Plaintiff as promised from August 2016 and June 2017.

      This case is distinguishable from Reyes.  In Reyes v. Smith, the Ninth Circuit found that a California inmate had exhausted a claim for deliberate indifference to a serious medical need, although his original administrative appeal failed to name all staff members involved in his case, because that

10

claim was decided on its merits at all levels of review. 810 F.3d at 656-57. The defendants in that case were members of a committee which the plaintiff blamed for his injury, and to which prison officials repeatedly referred in denying the plaintiff's administrative appeals. Id. at 659. Thus, prison officials could "easily identif[y]" the defendants' "involvement in the issue," even though the defendants were not named in the original administrative appeals.  In addition, the prison officials "ignore[d] the procedural problem and render[ed] a decision on the merits of the grievance at each available step of the administrative process." Id. at 658-59.

In contrast, here, the involvement of Defendant Bounville is not "easily identified" in the original grievance. Id. at 658.  Instead, the original administrative appeal did not name a specific individual and simply requested psychiatrist counseling and medication.  There is no mention that Defendant Bounville improperly held herself out to be a psychiatrist and instructed Plaintiff to stop of medication.  Indeed, at the first level of review, the appeals examiner noted that Plaintiff was requesting face to face counseling with a psychiatrist and medication.  (Gates Decl., Ex. 2.)  This demonstrates that prison officials interpreted grievance CCI-HC-17038702 as a general claim relating to mental health treatment and medication, and not involving a specific individual's alleged misconduct.  Because Defendant Bounville was not identified or alleged to have engaged in any misconduct in the original appeal, she could not have been "easily identified" in the original CCI-HC-17038702  grievance.  Further, unlike in Reyes, prison officials did not "opt not to enforce a procedural rule" as to Defendant Bounville. Reyes, 810 F.3d at 658.  At both the second and third levels of review, the response is confined to the allegations raised in the original CCI-HC-17038702 grievance.

At the second level of review, Plaintiff alleged as follows:

> Tehachapi State Prison does not provide adequate mental health care as required by Title 15 Sec. 3300(a).  Please see attached section.  This institution does not provide a on the grounds psychologist licensed to practice in this State or a supervision of a psychiatric to supervise mental health treatment or diagnostic services.  Per Title 15 Sec. 3301(a).  This facility only provides social workers and or a supervisor of social work as note on the face of the 602 staff response.   The inmate Estrada was led to believe that social worker, R. Bounville, was a licensed psychologist licensed to practice in this State and who holds a Doctoral Degree per this section.  In believing this "Hoax," the above inmate revealed deeply personal and private matters which now degraded and did not maintain the dignity of the inmate per Title 15 Sec.

11

> 3361(c). Inmates diagnoses in part include audio and visual allucinations [sic] which make it extremely difficult to communicate with an absent psychiatrist via televisual monitor. These sessions happen with a non-license medical staff present to overhear doctor/patient privileged information. Supervisor Paul Thornburg has no authority to refuse inmate psychiatric care or medication if inmate refused to work with or through the televisual monitor where a psychiatrist cannot give a full visual of the inmates signs of mental illness. This institution allow this inadequate mental health treatment & diagnostic services via television monitor, cause it does not have proper licensed psychiatrist or psychologist on grounds let alone a supervisor of psychiatry to oversee any and all social workers or counselors working with inmate diagnoses.

(Citation.)

While Plaintiff references that he was led to believe Defendant Bounville was a licensed psychologist at the second level of review, there are insufficient allegations that she engaged in any wrongdoing by holding herself out as a licensed psychologist, advised Plaintiff to stop taking his medication, and failed to evaluate him in August 2016 and June 2017. The factual allegations relating to Defendant Bounville do not provide sufficient notice to prison officials of the alleged wrongdoing at issue in this action.

As a result of Plaintiff's failure to describe any misconduct by or at the behest of Bounville, Plaintiff did not "provide the level of detail required by the prison's regulations," Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010), and therefore did not properly exhaust his administrative remedies for a claim that Bounville was deliberately indifferent to his serious mental health needs. See Woodford v. Ngo, 548 U.S. at 90. By failing to provide this information, Plaintiff failed to provide sufficient information to allow prison officials to take appropriate responsive measures to the problem of which he complains in his first amended complaint. Defendant Bounville has carried her burden to show that Plaintiff did not properly exhaust his administrative remedies for his claim against Bounville.

Once Defendant has met her burden, the burden shifted to Plaintiff to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable to him. See Albino, 747 F.3d at 1172. Plaintiff did not file an opposition and there is no evidence that something in his particular case made the administrative remedies process unavailable or that he is excused from the exhaustion requirement.

In addition, it is well-settled that in order to bring a claim against an official who reviews an administrative appeal, the inmate must separately grieve the official's actions. See Cortinas v. Portillo, 754 F. App'x 525, 527 (9th Cir. 2018) (concluding that a claim against an appeals coordinator for cancellation was not exhausted because it was not raised in a separate administrative appeal); McCurdy v. Rivero, No. 17-01043-BLF, 2018 WL 4300521, at *3, 6-7 (N.D. Cal. Sept. 10, 2018) (plaintiff failed to exhaust a claim for improper screening where the plaintiff's original administrative appeal mentioned neither the improper screening nor the screener); cf. Brodheim v. Cry, 584 F.3d 1262, 1266 (9th Cir. 2009) (noting that prisoner had properly exhausted administrative remedies where he had filed a new administrative appeal regarding the appeals coordinator's actions on review). Plaintiff never filed an original administrative appeal against Defendant Bounville, and he had thirty days from the January 26, 2017, health care appeal interview to do so. Accordingly, Plaintiff has failed to exhaust the administrative remedies as to Defendant Bounville.

2. Defendant Sullivan

Pursuant to the Court's February 12, 2019, screening order, Plaintiff contends that "Defendant Sullivan made the decision to employ social workers in place of licensed psychologists to save money." (ECF No. 9 at 10.) With these factually allegations in mind, the Court turns to whether Plaintiff put prison officials on notice of the allegations against Defendant Sullivan.

As discussed above, in the only relevant grievance CCI-HC-17038702, Plaintiff alleged that CCI failed to provide him adequate mental health treatment and he has been waiting months for a face to face meeting with a psychiatrist or psychologist. (DUdF 4.) While Plaintiff expressed his dissatisfaction with the delivery of CCI's mental health services and asked to be seen by a licensed psychiatrist or psychologist in person, he did not put CDCR on notice of the allegation in his complaint that Defendant Sullivan, or any other prison official at CCI, refused to hire on-site psychiatrists to save money for CDCR. (DUdF 4, 10.) Plaintiff failed to properly exhaust his administrative remedies as to Defendant Sullivan because he did not name him in his inmate appeal or specifically describe his alleged wrongdoing as required by CDCR's regulations. See Woodford v. Ngo, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without

13

imposing some orderly structure on the course of its proceedings."); see, e.g., Parks v. Chappell, No. C-13-4048 EMC (pr), 2015 WL 3466280 (N.D. Cal. 2015) (Chen, J.) (granting summary judgment in warden's favor because inmate appeal about injury-causing event did not mention warden by name or title); Martinez v. Swift, No. C 13-3973 RS (pr), 2015 WL 1349525, at *2 (N.D. Cal. 2015) (Seeborg, J.) (granting summary judgment for nonexhaustion because the grievance "does not mention [defendant], or describe with any specificity his actions or words" and therefore did not comply with section 3084.2(a)(3)); Panah v. State of Cal. Dep't of Corr. and Rehab., No. 14-cv-00166-BLF, 2015 WL 1263494, at *9-10 (N.D. Cal. 2015) (Freeman, J.) (even if plaintiff's failure to pursue inmate appeal to highest level is excused, he failed to properly exhaust his claim against the warden because his inmate appeal did not name the warden or describe the basis for his liability); Gray v. Smith, No. C 13-1229 WHA (pr), 2015 WL 875482, at *2-3 (N.D. Cal. 2015) (Alsup, J.) (granting summary judgment for nonexhaustion where inmate appeal described an incident at the prison but did not name the warden and did not describe a widespread practice or that the warden knew of the incident and failed to stop it). Plaintiff's simple reference that he was not satisfied with the delivery of CCI's mental health services, there is no mention of the claim that any individual was denying such services to simply save money. No reasonable person reviewing Plaintiff's contention in the context of the appeal would have understood that Plaintiff intended to complain about the lack of mental health services based on financial considerations. Although " '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation,' " Reyes v. Smith, 810 F.3d at 659, Plaintiff's appeal relating to the mental health services did not alert the prison to the claim that Defendant Sullivan was denying in person mental health treatment to save money and it did not suffice to satisfy the standards of § 3084.2(a) to exhaust administrative remedies for this event.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

      2.      The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 29, 2021**

UNITED STATES MAGISTRATE JUDGE